MARVIN SCHONDORF, RECEIVER OF B. H. B. CONSTRUC-
TION COMPANY, PLAINTIFF, v. P. A. B. REALTY CO., A
NEW JERSEY CORPORATION, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided May 5, 1967.

Mr. *Sanford Silverman,* appearing for the receiver.

Mr. *Francis C. Foley,* attorney for Barbosa Bros., Inc., a judgment creditor.

Mr. *Jacob Schneider,* attorney for Monroe Township Associates, Inc., offeror (Mr. *Myron Behr,* appearing).

HERBERT, J. S. C. This case raises a question about the meaning of section 25 of the General Corporation Act. *N. J. S. A.* 14:14–25; *L.* 1953, *c.* 14, § 34. The complaint was filed May 29, 1964. It alleged defendant's insolvency and demanded an adjudication of insolvency, an injunction restraining the exercise of corporate franchises and the appointment of a statutory receiver. On the same date an order to show cause was signed which merely provided that defendant corporation show cause on June 12, 1964 "why the requested judgment in the complaint should not be entered." On June 12 there was a continuance to June 19, on which date an order was signed appointing Mr. Schondorf receiver of defendant under the provisions of *N. J. S. A.* 14:14–4.

On February 4, 1964 Barbosa Bros., Inc. obtained judgment in the Superior Court against P. A. B. Realty Co. in the amount of $1,925.63 plus costs. The judgment also ran against B. H. B. Construction Company, but that is unimportant for present purposes. A problem now is presented because the receiver has an offer of $500 for all of his right, title and interest in certain real estate, but the offer is conditioned upon a sale's being made free and clear of the judgment lien. Since 1953 the pertinent part of section 25 of the Corporation Act (*N. J. S. A.* 14:14–25) has read as follows:

"All levies, judgments, attachments or other liens obtained through legal proceedings against a corporation at any time when the corporation shall be insolvent, and within four months prior to the making of the application against it for the appointment of a receiver under this chapter shall be deemed null and void in case a receiver shall be appointed by the court and the assets of such corporation distributed in such proceedings."

From an affidavit which has been filed in support of the receiver's petition to sell, I am convinced that on February 4, 1964, when the judgment was entered, the defendant was hopelessly insolvent. This leaves only a narrow question: Was "the application" for the appointment of a receiver made within four months after the entry of the judgment?

Before 1953 the judgment of Barbosa Bros. would have been void. The statute then in effect (*R. S.* 14:14–25) provided that the four-month period should terminate upon "the filing of a bill or petition against [the corporation] for the appointment of a receiver under this chapter." When this matter first came up on the motion list and my attention was directed to the change which was made in the wording of the statute in 1953 I thought the shift from a "filing" date to an "application" date quite significant and would have announced a decision in favor of the judgment creditor had there not been a request for time in which to find authorities. Since then I have been referred to only one case which seems to have any significance. It is *Smith v. Whitman,* 39 *N. J.* 397 (1963), where the Chief Justice said for a unanimous court:

"But equality in distribution has an obvious appeal and hence legislation has been adopted to achieve it within stated limits of time and circumstances. So our Legislature has provided that where a debtor makes an assignment for the benefit of creditors, the assignee may attack a preference acquired within four months of the general assignment. *N. J. S.* 2A:19–3, *N. J. S. A.* With respect to insolvent corporations, preferences are declared 'null and void as against creditors' in the circumstances set forth in *N. J. S. A.* 14:4–2, see *Central-Penn National Bank v. New Jersey Fidelity and Plate Glass Ins. Co.,* 119 *N. J. Eq.* 265 (*Ch.* 1935) ; and all liens obtained by legal proceedings within four months of an action for the appointment of a receiver are null and void as to the receiver. *N. J. S. A.* 14:14–25. Finally, we refer to the federal bankruptcy act, 11 *U. S. C. A.* § 96, under which a preference may be set aside if made or suffered by an insolvent debtor within four months of the filing of a petition by or against him. These statutes do not avoid a preference simply to permit another creditor to capture it for his sole gain but rather to the end that all general creditors, including the one preferred, may share ratably in all the assets of the debtor." (at *p.* 403)

Nothing in the facts of *Smith v. Whitman* called for a definition of the terminal point of the four-month period provided by *N. J. S. A.* 14:14–25, and I think it would be a mistake to assume—since nothing in the opinion gives a basis for anything stronger than an assumption — that the court considered the question presented here. I am even inclined to

suspect that the phrase found in the above quotation, and which reads "within four months of an action for the appointment of a receiver," was intended to be "within four months of an application for the appointment of a receiver." This second version follows the wording of the 1953 amendment, and "action" may have been inadvertently substituted in the opinion for "application."

After the present Superior Court began to function in 1948 there was an obvious reason for amending *R. S.* 14:14–25. The reference to the filing of "a bill or petition" was out of date; the first pleading in an action for the appointment of a receiver became a complaint. Both the receiver and the would-be purchaser argue that the act of 1953 must have been intended to bring up to date the terminology of section 25 without making any change in substance; therefore "application" should be construed as synonymous with "filing." Yet, if only a correct reference to modern pleadings had been intended, it would have been simple enough to have the act of 1953 specify a four-month period "prior to the filing of a complaint for the appointment of a receiver." That this was not done seems to indicate a change of some substance was intended when the word "application" was used.

I have made inquiry at the State Library and have been informed by a member of its staff that there is no helpful material on file there bearing upon the legislative history of *chapter* 14 of the *Laws of* 1953. The chapter is quite long, containing 45 sections. It amends and repeals various portions of the Corporation Act. One can readily see that it does much more than delete references to our old court system and substitute references to the new. I am satisfied that when *chapter* 14 was considered and passed the Legislature was dealing with matters of substance as well as matters of form.

Other than *Smith v. Whitman, supra,* I am aware of only three other cases in New Jersey which I think worth mentioning. One is *Gallo v. Moffett,* 8 *N. J. Misc.* 39, 148 *A.* 153 (*Sup. Ct.* 1930). It arose under a statute providing that no writ of *certiorari* should issue in a zoning matter unless ap-

plied for within 30 days after the filing of the decision of a board of adjustment. Within the 30-day period Gallo gave notice that he would appear before the Supreme Court on a date beyond the 30-day limit for the purpose of seeking a writ. When the matter did reach the court, and its timeliness was challenged, the applicant's attorney argued that service of the notice was an "application" within the meaning of the statute. The court rejected this argument summarily and denied the application for the writ as out of time. Whether the notice, or anything else, was filed with the clerk of the court during the 30-day period is not apparent from the opinion.

The *Gallo* case was followed in *Van Nest v. Nauman,* 9 *N. J. Misc.* 570, 1038, 155 *A.* 551, 552 (1931). That was a decision of Justice Parker sitting in the Morris County Circuit Court. He was dealing with a statute governing the time for an application to stay proceedings on a recognizance of bail. Notice was served within the prescribed 20-day period that a court appearance would be made on a date well beyond that period. It was argued that the notice was within time and was controlling, but the court said:

"As to the notice being equivalent to the application, such a rule has no foundation in the practice and was expressly repudiated in the *per curiam* of the Supreme Court in *Gallo v. Moffett,* 148 *A.* 153, 8 *N. J. Misc. R.* 39. I think it unnecessary to search the books for other authorities."

Another New Jersey case is *State v. Radicchi,* 78 *N. J. Super.* 286 (*App. Div.* 1963). The defendant was convicted in a municipal court of reckless driving and served notice of appeal to the County Court. Rule 3:10–8, then as now, provided:

"Within 10 days after filing the notice of appeal, the appellant shall apply to the court to which the appeal has been taken for an order fixing the date of hearing."

Before the ten-day period had expired defendant's counsel mailed to the clerk of the County Court several copies of

a form of order to fix a date for the hearing of the appeal. but the matter was not brought to the attention of a judge until about two months later when a motion was made to dismiss the appellate proceedings. The motion was granted, but an appeal was taken from the order of dismissal and the Appellate Division reversed, saying:

"We deem the application herein to have been made to the court within time, even though it was made through the medium of the clerk of the court. The clerk is an appropriate person with whom to file an application 'to the court.' Ordinarily, indeed, all applications to a court should be filed with its clerk. See *R. R.* 4:5–6.

\*     \*     \*     \*     \*     \*     \*     \*

The application here was well within the ten-day limitation. It was an *ex parte* application. The spirit of our rules is in accord with the procedure adopted by defendant's attorney in this respect. For example. see *R. R.* 4:7–2(a). We observe no need for a formal personal appearance by an attorney before the court to obtain this kind of order. Such an appearance would unnecessarily take up the time of both the court and the attorney." (at *p.* 292)

I see obvious differences between sending to the clerk of a court a blank order which, if signed, will do the very thing which must be applied for within a specified time, and on the other hand merely filing a complaint which demands the appointment of a receiver but can at the most only lead to the appointment as a separate step in the cause at a future time.

There are pertinent authorities in some other jurisdictions but they are not in agreement. In *People v. Brickey,* 346 *Ill.* 273; 178 *N. E.* 483 (*Sup Ct.* 1931), the court ruled as follows on one of the points argued before it:

"The bill of exceptions shows that on February 20 a motion to quash the indictment was filed in the office of the clerk of the circuit court of McLean county. This motion does not appear to have been presented to the court and ruled upon. A motion is an application made to the court, and the mere filing of a paper in the office of the clerk is not such an application. It must be brought to the attention of the court and the court asked to rule on it. *City of Decatur v. Barteau,* 260 *Ill.* 612, 103 *N. E.* 601. *City of Marengo v. Eichler,* 245 *Ill.* 47, 91 *N. E.* 758. Counsel not having done so, no question with reference thereto arises upon this review. *Keedy v. People,* 84 *Ill.* 569." (178 *N. E.*, at *p.* 484)

*Von Holt v. Carter,* 56 *F. 2d* 61, 63 (9 *Cir.* 1932), held that the filing of a petition of appeal in the office of the clerk of the court "cannot be considered an application 'duly made' within the language of the statute which in terms refers to an 'allowance.'"

*Hudson Electric Light Co. v. Inhabitants of Hudson,* 163 *Mass.* 346; 40 *N. E.* 109 (*Sup. Jud. Ct.* 1895), dealt with a statute fixing a 60-day period to "apply by petition to the supreme judicial court, or any justice thereof, setting forth the facts, and praying an adjudication between the parties. * * *" It was held that the filing of an appropriate petition with the clerk of the court within the specified period satisfied the requirements of the statute.

*United States v. Meyer,* 241 *F.* 305 (2 *Cir.* 1917), is a case in which a German subject, who had been brought to the United States as a small child and had lived here over 50 years, became aware that he was not an American citizen and filed his petition to become one on January 5, 1917. The prescribed period of 90 days having elapsed after the petition was filed, he appeared before the court and asked to be admitted to citizenship. By that time the United States was at war with Germany and a section of the *Revised Statutes* barred from citizenship anyone whose country might be at war with the United States "at the time of his application." A divided court held that Mr. Meyer made his "application" for citizenship when he filed his petition and rejected the argument of the Government that the controlling time was the date of the hearing in open court.

The cases I have cited show that there is no line of authority strong enough to dictate a result here. In the context before me, however, I am satisfied that something more is required than the filing of a complaint and the entry of an order to show cause. A goodly number of complaints for receivers under *Title* 14 are filed without an actual request for an appointment ever being made. The claims on which the complaints are based are settled, and then the reqeust to the court is for approval of an order of dismissal under the rule.

*R. R.* 4:36–3. In other cases the order to show cause which has been issued at the filing of the complaint will not be presented to the court on the return day, but there may be a whole series of adjournments while settlement possibilities are being explored. I mention these facts of practice because they suggest rather strongly that it would be unrealistic to regard the filing of a complaint for a statutory receiver in each and every case as an "application" for the appointment. I am persuaded that "filing" in the old statute is not synonymous with "application" in the new. The change was one of substance, I think, and indicates a legislative intent to shift to an event or act more significant than the procedural one of filing a paper. I am also persuaded that if an "application" is to be made for the appointment of a receiver under the statute, there must be an occasion on which a judge—on the basis of pleadings properly filed — actually is requested to make the appointment. A request to sign an order to show cause is not a request for an appointment; it is merely a device to notify a defendant in the proper way about the time and place when the court will actually be asked to appoint. Here the application was not made until June 19, 1964. By then the judgment lien was over four months old and therefore it is not void under *N. J. S. A.* 14:14–25.

The application for leave to sell free and clear of the judgment lien is denied.